UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| MARY JANE POUNTNEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:23-CV-00029 RHH |
| ) | |
| MARTIN O'MALLEY, [1] ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Mary Jane Pountney's appeal regarding the denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (the "Act") and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF No. 8.) The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence. Based on the following, the Court will affirm the Commissioner's denial of Pountney's application.

**I.     Background**

The Court adopts the statement of facts set forth in Pountney's statement of facts (ECF No. 21-1) and Defendant's response (ECF No. 24-1). Together, these statements provide a fair

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley shall be substituted for Kilolo Kijakazi as the defendant in this suit. *See* 42 U.S.C. § 405(g).

description of the record before the Court. Specific facts will be discussed as needed to address the parties' arguments.

On or about May 2, 2018, Pountney applied for DIB and SSI, alleging that she has been unable to work due to disability since July 1, 2017. (Tr. 172-179.) Pountney later amended her alleged onset date to February 10, 2018. (Tr. 200.) Pountney alleged disability due fibromyalgia, anxiety, depression, IBS, hypermobility syndrome, pseudoarticulation of spine, degenerative joint disease, inflammation, chronic pain, and confusion. (Tr. 88, 96.) Her application was initially denied. (Tr. 87-102.) Then, she filed a request for Hearing by Administrative Law Judge (ALJ). (Tr. 111-112.) On November 21, 2019, the ALJ held a hearing on Pountney's claim. (Tr. 54-86.) Pountney was represented by counsel at the hearing, and an impartial vocational expert testified. *Id.*

In a decision issued on December 13, 2019, the ALJ found Pountney was not disabled as defined in the Act from the alleged onset date through the date of decision. (Tr. 23.) On December 17, 2019, Pountney filed a Request for Review of Hearing Decision with the Social Security Administration's (SSA) Appeals Council. (Tr. 165-168.) On July 25, 2020, the Appeals Council denied Pountney's request for review, and adopted the ALJ's decision in full. (Tr. 1-5.)

Thereafter, Pountney filed a civil action against Defendant in the United States District Court of the Western District of Missouri. On October 7, 2021, the district court reversed and remanded the case pursuant to Defendant's unopposed Motion to Reverse and Remand pursuant to sentence four of 42 U.S.C. § 405(g). (Tr. 668.) The Court's order stated "Defendant states that remand is necessary to allow further evaluation of the persuasiveness of medical opinion evidence pursuant to 20 C.F.R. § 404.1520c; 416.920c." (*Id.*)

In an order dated February 11, 2022, the SSA Appeals Council vacated the hearing decision, and remanded Pountney's case to the ALJ. (Tr. 672.)² On July 20, 2022, a second hearing was conducted before the same ALJ who issued the December 13, 2009 decision. (Tr. 506-563.) At the hearing, Pountney was represented by counsel, and the ALJ heard testimony from an impartial medical expert and an impartial vocational expert. On October 5, 2022, the ALJ denied benefits again. (Tr. 470-505.) Plaintiff timely filed exceptions to the ALJ's decision, and on March 17, 2023, the Appeals Council denied Plaintiff's request for review, and adopted the ALJ's decision in full. (Tr. 462-469.) Plaintiff filed a complaint with this Court on May 24, 2023, which was 68 days after the Appeals Council adopted the ALJ's decision. Defendant filed a motion to dismiss this action as untimely because Pountney filed her complaint several days beyond the required time limits. (ECF No. 9.) The Court denied the motion. (ECF No. 11.)

## II.     Standard for Determining Disability Under the Act

The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a

---

² The SSA Appeals Council noted that Pountney filed subsequent claims for Title II and Title XVI disability benefits on November 10, 2020. (Tr. 671.) The Council directed the ALJ to consolidate the claims files, combine evidence, and issue a new decision on the consolidated claims.

specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

**III.    The ALJ Decisions & Appeals Council Remand Order**

**The ALJ's 2019 Decision**

Applying the foregoing five-step analysis, the ALJ here originally found that Pountney met the insured status requirements of the Social Security Act through September 30, 2020, and that Pountney had not engaged in substantial gainful activity since February 10, 2018, the amended

alleged onset date. (Tr. 14.) Next, the ALJ found that Pountney has the following severe impairments: degenerative disc disease of the lumbar spine; degenerative joint disease of the right knee; hypermobility of the bilateral hands, wrists, elbows, and knees; fibromyalgia; obesity; and mental impairments, variously diagnosed as attention deficit hyperactivity disorder (ADHD), depression, and anxiety. The ALJ found Pountney's irritable bowel syndrome to be a non-severe impairment and found her hearing loss, headaches, and dizziness/vertigo to not be established impairments. (Tr. 15.)

The ALJ determined that Pountney did not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. The ALJ also determined that Pountney had the residual functional capacity to perform light work except that:

> She requires a sit/stand option allowing a change of position every 30 to 60 minutes for a few minutes at a time while remaining at the workstation with no loss in production. If it were a standing job, she would be able to sit for a few minutes and then stand back up. It would be the opposite for a sitting job, she would be able to sit and then stand up for a few minutes and sit back down. The claimant cannot climb on ropes, ladders, or scaffolds. The claimant can occasionally climb on ramps and stairs, stoop, kneel, crouch, or crawl. The claimant should avoid concentrated exposure to work hazards, such as unprotected heights and being around dangerous, moving machinery. The claimant is able to understand and carry out simple instructions consistent with unskilled work. The claimant can tolerate occasional interaction with coworkers, supervisors, and the general public.

(Tr. 17.) The ALJ found that Pountney was unable to perform any past relevant work. (Tr. 21.) Pountney was 29 years old and considered a younger individual on the alleged onset date. She has at least a high school education. (Tr. 22.) The ALJ determined that the transferability of job skills is not material to the determination of disability because the Medical-Vocational Rules support a finding that Pountney is "not disabled" whether or not he has transferable job skills. Based on the foregoing, the ALJ found that there are jobs that exist in significant numbers in the national

5

economy that Pountney can perform, including mail clerk (Dictionary of Occupational Titles (DOT) No. 209.687-026, light exertion level, SVP 2, approximately 13,000 jobs in the national economy), marker (DOT No. 209.587-034, light, SVP 2, approximately 125,000 jobs in the national economy), and routing clerk (DOT No. 222.687-022, light, SVP 2, approximately 98,000 jobs in the national economy). (Tr. 22.) Therefore, the ALJ concluded that Pountney was not disabled, as defined in the Act, from February 10, 2018, through December 13, 2019. (Tr. 23.)

**Appeals Council Remand Order**

As discussed above, Pountney filed suit in the United States District Court for the Western District of Missouri, and the court remanded the case for further evaluation. In an order dated February 11, 2022, the SSA Appeals Council vacated the original hearing decision, and remanded Pountney's case to the ALJ for resolution of the following issues:

> The hearing decision does not contain adequate evaluation of the opinion evidence. The claimant filed his applications for Title II benefits and Title XVI on May 2, 2018; thus, the regulations at 20 CFR 404.1520c and 416.920c govern the evaluation of medical source statements. According to 20 CFR 404.1520c(b)(2) and 416.920c(b)(2), the factors of supportability and consistency are the most important factors considered when an Administrative Law Judge evaluates the persuasiveness of a medical source's opinion or prior administrative finding. On page 9 of the hearing decision, the Administrative Law Judge evaluated the opinion from the claimant's rheumatology nurse Cheryl L. McGowan, FNP (Exhibit 6F/70). The Administrative Law Judge found Nurse McGowan's statements were "not entirely consistent with the objective medical evidence." While the Administrative Law Judge discussed the consistency factor in evaluating Nurse McGowan's opinion, the hearing decision did not discuss the objective medical evidence in finding her opinion not supported. Additionally, the hearing decision does not address the portion of Nurse McGowan's opinion that the claimant would need to "lie down frequently" (Exhibit 5F/2). This limitation assessed by Nurse McGowan is not consistent with the assessed residual functional capacity as described in the decision, and the Administrative Law Judge did not explain why such a limitation was not included in the residual functional capacity assessment.
>
> Also on page 9 of the hearing decision, the Administrative Law Judge discussed the medical source statement from the claimant's primary care physician, Justin Terrell, M.D., but did not evaluate or assess the persuasiveness of the assessment by this treating source. Dr. Terrell opined that "it would be difficult for the claimant

6

> to perform jobs that required prolonged sitting, standing, and lifting" (Exhibit 7F). These limitations assessed by Dr. Terrell are not consistent with the assessed residual functional capacity as described in the decision, and the Administrative Law Judge did not explain why such limitations were not included in the residual functional capacity assessment. The Appeals Council notes that the sit/stand option in the residual functional capacity is not compatible with Dr. Terrell's assessment that the claimant should avoid prolonged sitting or standing during an entire workday. Additionally, the hearing decision does not consider the supportability and consistency of Dr. Terrell's opinion with the rest of the administrative record. Further evaluation of the opinion evidence in accordance with 20 CFR 404.1520c and 416.920c is warranted.

(Tr. 671-72.) The SSA Appeals Council directed that upon remand, the ALJ should:

> Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, evaluate the medical source opinion(s) and prior administrative medical findings pursuant to the provisions of 20 CFR 404.1520c and 416.920c. As appropriate, the Administrative Law Judge may request the medical sources provide additional evidence and/or further clarification of the opinions (20 CFR 404.1520b and 416.920b). The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's medical sources.
>
> If warranted, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

(Tr. 672.)

### The ALJ's 2022 Decision

On remand the ALJ again applied the SSA's five-step analysis in determining Pountney was not disabled. In the final decision at issue on appeal, the ALJ found that Pountney has the following severe impairments: degenerative disc disease of the lumbar spine; degenerative joint

7

disease of the right knee; peripheral versus autoimmune neuropathy, fibromyalgia, obesity, attention deficit hyperactivity disorder (ADHD), bipolar II disorder and generalized anxiety disorder. (Tr. 476.) The ALJ found Pountney's obstructive sleep apnea, endometriosis, allergies, benign vertigo, irritable bowel syndrome, and hypermobility syndrome are not "severe" impairments.

The ALJ determined once again that Pountney did not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. The ALJ also determined that Pountney had the residual functional capacity to perform light work except that:

> She can stand and walk for 4 hours out of an 8-hour workday; can sit for 30 minutes or stand for 30 minute at a time and alternate positions as needed; can never climb on ropes, ladders, or scaffolds; can never crawl; can occasionally climb on ramps or stairs; can occasionally stoop, kneel, or crouch; can occasionally balance as that term is described in the Dictionary of Occupational Titles (DOT) and Selected Characteristics of Occupations (SCO) and not as is commonly defined; should avoid concentrated exposure to extreme cold and pulmonary irritants, such as gas, fumes, odors, dusts, and workplaces with poor ventilation; is limited to moderate or office noise; should avoid bright and/or flashing lights at the intensity found in a theater or football field; should avoid concentrated exposure to vibration and work hazards, such as unprotected heights and being around dangerous, moving machinery; is able to understand, remember, and carry out simple instructions consistent with unskilled work; can perform only simple decision-making related to basic work functions; can tolerate only minor, infrequent changes within the workplace; can tolerate occasional interaction with co-workers and supervisors; and should avoid interaction with the general public.

(Tr. 481.)  The ALJ found that Pountney was unable to perform any past relevant work. (Tr. 494.) Pountney was 29 years old and considered a younger individual on the alleged onset date. She has at least a high school education. (Tr. 495.) The ALJ determined that the transferability of job skills is not material to the determination of disability because the Medical-Vocational Rules support a finding that Pountney is "not disabled" whether or not he has transferable job skills. Based on the foregoing, the ALJ found that there are jobs that exist in significant numbers in the national

8

economy that Pountney can perform, including marker (DOT No. 209.587-034, light exertion level, SVP 2, approximately 10,000 jobs in the national economy), collator operator (DOT No. 208.685-010, light, SVP 2, approximately 20,000 jobs in the national economy), and small parts assembler (DOT No. 706.684-022, light, SVP 2, approximately 30,000 jobs in the national economy). (Tr. 496.) Therefore, the ALJ concluded that Pountney was not disabled, as defined in the Act, from February 10, 2018, through October 5, 2022. (Tr. 496-97.)

## IV. Standard for Judicial Review

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court must affirm the Commissioner's decision if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942. *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the Court "'do[es]

not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

**V.     Discussion**

Pountney argues that the ALJ erred in two ways: (1) by failing to properly assess the medical opinion evidence; and (2) by failing to comply with the Appeals Council's remand directive.

**A.  Judicial Review of Whether the ALJ Complied with the Remand Order**

Pountney contends that the ALJ erred when she "failed to follow the specific directives of the Appeals Council remand" by failing to follow the regulations in assessing medical opinions. (ECF No. 21, p. 18.) Pountney is also critical of the ALJ's assessment of NP McGowan's opinion in part because the ALJ did not specifically address a point made by the Appeals Council Remand Order stating the ALJ's 2019 hearing decision did not address the portion of the opinion that claimant would need to "lie down frequently," a limitation that was not consistent with the assessed RFC in the 2019 decision. (Tr. 671.)

Pountney's arguments regarding the Appeals Council's directive overlap with her arguments regarding the failure to properly evaluate medical opinion evidence. Accordingly, the undersigned will address some of these arguments when evaluating the ALJ's assessment of the medical opinions. However, this Court's review is limited to determining whether the ALJ's

10

findings are based on correct legal standards and supported by substantial evidence on the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).

The Appeals Council reviewed the ALJ's new decision, and on March 17, 2023, it denied Pountney's request for review and found no basis for changing the ALJ's decision. "The issue whether an ALJ complied with a remand order evaporates when the Appeals Council adopts the ALJ's decision as the Commissioner's final decision; with that action, the Appeals Council implicitly acknowledges that the ALJ's decision is compliant with the remand order." *Sanders v. Astrue*, No. 4:11CV1735 RWS TIA, 2013 WL 1282330, at *11 (E.D. Mo. Feb. 8, 2013), *report and recommendation adopted,* No. 4:11 CV 1735 RWS, 2013 WL 1281998 (E.D. Mo. Mar. 27, 2013).

Therefore, "because 42 U.S.C. § 405(g) authorizes judicial review solely to determine whether substantial evidence supports the Commissioner's decision and whether that decision comports with relevant legal standards, the question of whether the ALJ complied with the Appeals Council's remand order is not subject to judicial review." *Vanepps v. Comm'r of Soc. Sec.*, No. C18-5-LTS, 2019 WL 1239857, at *7 (N.D. Iowa Mar. 18, 2019) (rejecting argument that ALJ went too far in evaluating other issues not ordered by the Appeals Council's remand order); *See also Jason M. G. v. O'Malley*, No. 23-CV-0084 (JFD), 2024 WL 1095915, at *5 (D. Minn. Mar. 13, 2024) ("The Eighth Circuit Court of Appeals has not addressed the issue, but other district courts in this Circuit have determined that an ALJ's failure to follow the Appeals Council's remand instructions is not subject to judicial review.") (collecting cases). The Court will review the ALJ decision to determine if it complies with relevant legal standards, not whether it complied with the Appeals Council's remand order.

11

### B. Medical Opinion Evidence

Pountney contends that the ALJ failed to properly evaluate some of the medical opinion evidence in conformance with the applicable regulations. The Commissioner's regulations provide that, for claims filed on or after March 27, 2017, ALJs will not defer to or give any specific evidentiary weight, including controlling weight, to any medical opinion. *See* 20 C.F.R. § 416.920c(a) (2017). Instead, ALJs must evaluate the persuasiveness of medical opinions and prior administrative medical findings in light of several factors, the most important of which are supportability and consistency with the record. 20 C.F.R. § 416.920c(a)-(c) (2017). ALJs must explain how they considered the factors of supportability and consistency in their decisions, but need not explain how they considered the other factors. 20 C.F.R. § 416.920c(b) (2017).

For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical findings will be." 20 C.F.R. §§ 404.1520c (c)(1); 416.920c (c)(1). Thus, supportability is an assessment of how well a medical source supported and explained his or her opinion. *Daniels v. Kijakazi*, No. 21 Civ. 712 (GWG), 2022 WL 2919747, at *5, (S.D.N.Y. July 26, 2022).

The regulations provide that "consistency" means "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c (c)(2); 416.920c (c)(2). "Thus, '[c]onsistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record, not just what a medical source had available to

them.'" *Daniels*, 2022 WL 2919747, at *5 (quoting *Cuevas v. Comm'r of Soc. Sec.*, 2021 WL 363682, at *10 (S.D.N.Y. Jan. 29, 2021)).

### Cheryl McGowan, FNP

On August 29, 2019, FNP Cheryl McGowan, Pountney's treating nurse practitioner, submitted a letter "regarding [Pountney's] illness." (Tr. 376-77.) In the letter, FNP McGowan stated Pountney was diagnosed with fibromyalgia by a local rheumatologist on May 14, 2018, and that Pountney has a long history of widespread pain, fatigue, reduced physical mobility, sleep disturbance, and poor concentration. FNP McGowan explained:

> Mary has experienced pain over most of her body while still in her 20's. Areas involved include the back, ankles, hips and knees. She has the sensation the joints are swollen constantly. She complains of difficulty moving due to pain; sometimes she is unable to get out of bed. She has stiffness of the body that can last all day. the patient is described as deep and aching. She has popping of the hips daily that is painful. A heating pad is required to reduce stiffness and pain. Has ongoing headaches that are being managed by her primary care provider.
> The patient has extreme fatigue. She has difficulty staying in one position for more than a few minutes due to pain. She must change positions, walk or lie down frequently. This makes working difficult. Spacing activities to preserve energy is essential in her everyday life. She has difficulty falling and staying asleep. The patient has tried sleep medications that have been ineffective. Her sleep is non-restorative; she feels tired and fatigued most of the following day.

(Tr. 376-77.) On the same day of FNP McGowan's letter, she had a follow up patient visit with Pountney. (Tr. 446-447.) FNP McGowan documented that on physical exam, Pountney had mild hypermobility of hands and wrists, pain with palpation of upper back and shoulders, elbows, trochanter region and lower legs, and tense trapezius muscles. She had tenderness over 10/18 points suggestive of fibromyalgia. (Tr. 447.) FNP McGowan documented that Pountney has finished physical therapy for her back and feels it has been helpful, however she needs a brace for her back and ankle for activity. She documented that Pountney has pain over 18 of the 19 points that are diagnostic using the modified criteria for fibromyalgia diagnosis, and Pountney must get

13

up frequently and move and is required to change positions due to pain and pressure in the back or extremities. FNP McGowan had Pountney continue her current medications and ordered her to return to the clinic in a year or sooner if needed. (Tr. 447.)

The ALJ found:

> The opinions of Ms. McGowan are unpersuasive (Exhibits 5F, 6F/70). Her opinions are not reasonably supported by or consistent with the cumulative medical and non-medical evidence of record. Ms. McGowan attributed most of the claimant's limitations to her reportedly "extreme fatigue" and difficulty moving due to pain; however, neither Ms. McGowan nor any other Justin Terrell, MD medical source has documented medical signs consistent with a finding that the claimant experiences fatigue or pain of the degree her opinion suggests. The only persistently abnormal medical signs noted on examination has been the claimant's obesity. Indeed, during the examination in which Ms. McGowan consulted with the claimant about "disability paperwork," Ms. McGowan noted no objective indicators that the claimant was fatigued (e.g., she did not note the claimant to appear fatigued or to have impaired strength, attention, or concentration due to fatigue). Although she documented some medical signs suggestive of painful underlying impairments -- mild hypermobility of the hands and wrists, tense trapezius muscles, and 10/18 tender points -- those medical signs are not commensurate with the extreme degree of limitation identified by Ms. McGowan (Exhibit 6F/70). Moreover, Ms. McGowan's opinion does not appear consistent with the claimant's statements that she is a stay-at-home mother who loves to game and is able to drive kids around "a lot" (Exhibits 14F/11; 15F/159, 166, 183, 191, 203, 208, 213, 218; 19F/19, 28, 38, 44, 61, 67, 89, 98; 23F/2, 9, 15).

(Tr. 491-492.)

Pountney contends the ALJ failed to discuss the objective medical evidence in finding the opinion not supported.[3] Specifically, she contends the ALJ discounted the existence of objective evidence in support of FNP McGowan's opinion, and failed to note FNP McGowan's May 14, 2018 exam of Pountney. (ECF No. 21, p. 17.) Pountney does not develop additional argument in her briefing as to why the ALJ erred in evaluating FNP McGowan's opinion beyond more globally

---

[3] Pountney also contends the ALJ did not address the portion of FNP McGowan's opinion that Pountney would need to lie down frequently which was specifically cited in the Appeals Council Remand Order. As discussed above, the ALJ's compliance with the Appeals Council Remand Order is not subject to judicial review. *See Jason M. G. v. O'Malley*, No. 23-CV-0084 (JFD), 2024 WL 1095915, at *4 (D. Minn. Mar. 13, 2024).

arguing that the ALJ "failed to evaluate a multitude of the objective evidence" that supports FNP McGowan's opinion.

Contrary to Pountney's contention, the ALJ provides a thorough summary of the objective medical evidence, including the details of the May 14, 2018 exam that Pountney suggests was ignored. *See Lawrence v. Saul*, 970 F.3d 989, 996 (8th Cir. 2020) (upholding the ALJ's decision when the ALJ acknowledged the medical evidence noted by the plaintiff but placed different and permissible weight on the evidence). To the extent Pountney is arguing that the ALJ somehow erred in her evaluation of FNP McGowan's opinion, the Court finds that the ALJ properly considered the factors of supportability and consistency. Upon consideration, the Court finds that substantial evidence supports the ALJ's decision to find FNP McGowan's opinions unpersuasive. *See Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001) (holding as long as there is substantial evidence in the record that supports the decision, this Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently). The Court therefore finds that the ALJ did not err in her consideration of FNP McGowan's opinion in determining whether Pountney was disabled.

### Justin Terrell, M.D.

On October 22, 2019, Dr. Justin Terrell, Pountney's primary care physician, submitted a letter regarding Pountney. (Tr. 454.) Dr. Terrell explained:

> I treat [Pountney] for a variety of disorders/diagnoses including but not limited to fibromyalgia, chronic back pain, chronic joint pain, anxiety and depression, ADHD, and peripheral neuropathy. These chronic illnesses lead to dysfunction in daily life as well as ability to work. The patient reports that working exacerbates these symptoms including pain, fatigue, and psychological distress. The requirements of working full time, including prolonged sitting or standing, lifting, prolonged focusing, and prolonged interpersonal interaction are difficult for the patient to perform given the combined effects of the above chronic illnesses and

> working in turn exacerbates these symptoms. These illnesses for which I treat her are the basis of her claim of disability.

(Tr. 454.) The ALJ found:

> The opinion of Dr. Terrell, M.D. (Exhibit 7F) is persuasive to the extent it is consistent with the residual functional capacity (RFC). This is because the RFC accounts for limitations for no prolonged sitting or standing greater than 30 minutes at a time and limits the claimant to unskilled work with limited social interaction. Dr. Terrell found that the claimant has some work-related limitations and that working would exacerbate the symptoms of her impairments, but he did not assess any greater limitations than have been included in the residual functional capacity herein. "The requirements of working full time, including prolonged sitting or standing, lifting, prolonged focusing, and prolonged interpersonal interaction are difficult for the patient to perform given the combined effects of fibromyalgia, chronic back pain, chronic joint pain, anxiety, depression, ADHD, and peripheral neuropathy, "and working in turn exacerbates these symptoms" (Exhibit 7F). The opinion is persuasive to the extent his opinion is supported by and consistent with other evidence of record, including the prior administrative medical findings of Dr. Weiss and Dr. Endsley, the testimony of the impartial medical expert, and Dr. Terrell's own treatment notes (*see* Exhibit 6F/74-75, documenting complaints related to the claimant's impairments but no abnormal medical signs on physical examination other than the claimant's obesity).

(Tr. 492.)

Pountney contends the ALJ erred because she again did not explain the basis for finding or provide examples of how Dr. Terrell's opinion was inconsistent with the record. However, the ALJ sufficiently addressed the supportability and consistency factors under 20 C.F.R. § 404.520c in evaluating Dr. Terrell's opinion. Dr. Terrell opined that prolonged sitting or standing, lifting, focusing, and personal interactions are "difficult" for the patient to perform due to her impairments. (Tr. 454.) Notably, this assessment does not provide a limitation regarding the most that Pountney can do. The ALJ correctly finds that Dr. Terrell did not assess any greater limitations than were included in the RFC determination, as the RFC finds that Pountney can sit for 30 minutes or stand for 30 minutes at a time and alternate positions as needed. Because Dr. Terrell's opinion does not provide measurable limits as to what constitutes "prolonged" activity or provide function-by-

16

function limitations, it was acceptable for the ALJ to find Dr. Terrell's vague opinion persuasive to the extent it is consistent with the RFC. The ALJ found that Dr. Terrell's restriction regarding prolonged sitting, standing, or lifting is supported by his own treatment notes, which document Pountney's complaints, but also do not contain abnormal medical signs on physical examination other than Pountney's obesity. The ALJ also found that Dr. Terrell's opinion is persuasive to the extent it is supported by the prior administrative findings of Dr. Weiss and Dr. Endsley, and the testimony of impartial medical expert Dr. Holan. *See Tindell v. Barnhart*, 444 F.3d 1002, 1006 (8th Cir. 2006) ("It is the ALJ's function to resolve conflicts among the various treating and examining physicians") (internal quotation omitted). "Once the ALJ has decided how much weight to give a medical opinion, the Court's role is limited to reviewing whether substantial evidence supports this determination, not deciding whether the evidence supports the plaintiff's view of the evidence." *Beamer v. Saul*, No. 2:18-CV-00094 JAR, 2020 WL 1511350, at *7 (E.D. Mo. Mar. 30, 2020) (citation omitted). *See also Couch v. Berryhill*, No. 2:18 CV 46 DDN, 2019 WL 1992623, at *6 (E.D. Mo. May 6, 2019) (same). The undersigned finds no error in the ALJ's evaluation of Dr. Terrell's opinion.

Pountney does not develop specific argument in her briefing regarding error in the ALJ's evaluation of the other medical opinion evidence in the record. However, Pountney contends that "it is significant" that Pountney had four different treating sources that believe she cannot withstand the rigor of an 8-hour day 5 days a week. This argument refers to NP McGowan and Dr. Terrell above, as well as Benjamin Crenshaw, M.D. (Pountney's treating physician) and Kevin Williams, PLPC (Pountney's therapist). The ALJ found the opinions of Dr. Crenshaw and Mr. Williams to be unpersuasive. Both providers submitted multiple letters in 2021 and 2022 in support of Pountney's claim for disability. (Tr. 1370, 1511, 1512-13, 1557-1558, 1559-1560.) Dr.

17

Crenshaw first opinion stated it would be "impossible" for Pountney to perform work on a regular basis (Tr. 1370), then his second opinion was that it would be "extremely difficult for her to maintain normal employment" and that she "is medically disabled from keeping meaningful employment" (Tr. 1512). The ALJ appropriately found that statements on issues reserved to the Commissioner are inherently neither valuable nor persuasive. (Tr. 493.) *See Pierce v. Kijakai*, No. 20-CV-1426, 2022 WL 888141, at *7 (E.D. Mo. Mar. 25, 2022) ("Because Gardner did not identify what Pierce can still do despite her impairments and the issue of whether Pierce can work is a matter reserved to the Commissioner, Gardner's report did not constitute a medical opinion under sections 404.1513(a)(2) and 416.913(a)(2)."). The ALJ noted that Dr. Crenshaw's opinion did not sufficiently articulate a degree of limitation which reduced the supportability and persuasiveness of the opinion, and that he appeared to overly rely on Pountney's subjective complaints, which were not fully consistent with other evidence of record. Similarly, Mr. Williams' opinion explicitly stated that they were based on Pountney's statements to him. (Tr. 1557.) The ALJ found such statements and Mr. William's observations to be inconsistent with other evidence in the record. *See, e.g., McClellan v. Kijakazi*, 2021 WL 4198390, at *3 (W.D. Mo. Sept. 15, 2021) ("By stating that Plaintiff's physical examinations 'do not show the level of dysfunction [Plaintiff] suggested,' the ALJ sufficiently considered and articulated the consistency of [Plaintiff's] medical opinion with other evidence in the record.").

While Plaintiff argues that this evidence could support an opposite outcome, it is not the Court's duty to re-weigh the evidence or review the factual record de novo. *See Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2002). "[T]he standard of review requires this Court to determine whether substantial evidence supports the ALJ's findings, not whether substantial evidence would also support contrary findings[.]" *Moss v. Colvin*, 2016 WL 3125886, at *5 (E.D. Mo. June 3, 2016).

18

Substantial evidence supports the ALJ's decision that Dr. Crenshaw's and Mr. Williams' opinions were unsupported and inconsistent, and the ALJ did not err in not giving more weight to the treating sources that opined Pountney could not withstand the rigor of a full work week.

The Court acknowledges that the record contains conflicting evidence, and the ALJ could have reached a different conclusion. However, this Court's task is not to reweigh the evidence presented to the ALJ. The ALJ's weighing of the evidence here fell within the available "zone of choice," and the Court cannot disturb that decision merely because it might have reached a different conclusion. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011); *see also Adkins v. Comm'r, Soc. Sec. Admin.*, 911 F.3d 547, 550 (8th Cir. 2018) ("[I]t is not the function of a reviewing court to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence on the record as a whole which supports the decision of the ALJ.").

### VI.   Conclusion

Having reviewed the entire record, the Court finds that the ALJ made a proper RFC determination based on a fully and fairly developed record. Consequently, the Court determines that the ALJ's decision is supported by substantial evidence.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**. (ECF Nos. 1, 21.)

**IT IS FURTHER ORDERED** that the decision of the Commissioner is **AFFIRMED**.

Dated this 24th day of September, 2024.

                                                RODNEY H. HOLMES
                                                UNITED STATES MAGISTRATE JUDGE